145 N.J. Super. 316 (1976)
367 A.2d 912
JOHN R. CAMPBELL, PLAINTIFF,
v.
ATLANTIC COUNTY BOARD OF FREEHOLDERS, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 16, 1976.
*320 Mr. Jeffery A. April for plaintiff (Messrs. Perskie & Callinan, attorneys).
Mr. David L. Horuvitz for defendant (Messrs. Horuvitz, Perlow & Ritter, attorneys).
FRANCIS, A.J.S.C.
This is an action in lieu of prerogative writs, wherein plaintiff challenges the legality of his summary dismissal as Emergency Employment Administrator *321 for Atlantic County. He seeks damages and an order restoring him to that position.
Plaintiff was appointed Emergency Employment Administrator on October 13, 1971, by resolution of the board of freeholders. In May 1972 that position was transferred to the newly created Department of Administration for Federal and State Grants and Aid, operating under the supervision of the board of freeholders. As Emergency Employment Administrator, plaintiff was responsible for the administration of matters arising under the Federal Emergency Employment Act of 1971, 85 Stat. 146, 42 U.S.C.A. 4871 et seq. These duties apparently involve substantial interaction with the U.S. Department of Labor. On May 5, 1973, while serving in this position, plaintiff was indicted by an Atlantic County grand jury. The matter was communicated to the Department of Labor by a member of the board of freeholders. An official in the Department subsequently advised the board, by letter dated May 13, 1973, that plaintiff should be removed from his position "in the interests of the proper administration of the program." Plaintiff was discharged on June 7, 1973 by resolution of the board which referred only to the recommendation of the U.S. Department of Labor. He was discharged without prior notice and without a hearing. Plaintiff was subsequently acquitted, at a jury trial, of all charges brought against him in the indictment.
This action was commenced in June 1973. The case was initially delayed pending the resolution of related matters in the U.S. District Court but cross-motions for summary judgment were later heard and denied. The matter proceeded to trial on June 28, 1976 and decision was reserved pending briefs. The court has encountered some difficulty in ascertaining and extracting plaintiff's various contentions from the pleadings, proofs and argument. Nonetheless, all issues fairly presented are treated herein. Plaintiff contends that his dismissal without notice and hearing was illegal. He bases this claim on his rights under the Veterans' Act, N.J. *322 S.A. 38:16-1 et seq., certain resolutions of the Atlantic County Board of Freeholders and the Due Process Clause of the Fourteenth Amendment, U.S. Const. Amend. XIV.
The parties have admitted in their pleadings, and this court accepts as fact, that plaintiff held his position as Emergency Employment Administrator as a member of the unclassified civil service. Plaintiff contends, nonetheless, that he was protected by the terms of the Veterans' Act, which prohibits the discharge of veterans holding certain state, county or municipal employment, positions or offices "except for good cause shown after a fair and impartial hearing." That claim must be rejected under the specific holding of Schroeder v. Essex Freeholder Bd., 63 N.J. 124 (1973), clarifying the scope of Perrella v. Jersey City Bd. of Ed., 51 N.J. 323 (1971). It has been stipulated that plaintiff is a veteran within the terms of the act. It is his status as an unclassified civil servant, however, which controls here. As outlined in Perrella and Schroeder the later enactment of the Civil Service Act, N.J.S.A. 11:1-1 et seq., has superseded veterans' tenure. The protections of N.J.S.A. 38:-16-1 et seq. are simply unavailable to those in the unclassified civil service. See N.J.S.A. 11:22-2.
Plaintiff next argues that his summary dismissal was prohibited by three separate resolutions passed by defendant board of freeholders, the same body which discharged him by resolution. These contentions must also fail. The resolution dated October 13, 1971 was passed to appoint plaintiff to his position as Emergency Employment Administrator. The resolution indicated that the appointment was to be "for the duration of such project (the U.S. Emergency Employment Act of 1971) and for any replacement, substitution, extensions and renewals thereof," but no evidence has been presented to indicate that either plaintiff or defendant attributed any contractual effect to that phrase. The resolution also indicates plaintiff's responsibilities and his salary range. It was not a contract of employment but an *323 administrative mechanism necessary to formally effectuate the board's action. Plaintiff's discharge was not barred by the resolution.
The resolution of September 13, 1972, providing for prior written notice in the event of discharge of any county employee, is also raised. The board's failure to comply with the terms of its own resolution may be regrettable but plaintiff has failed to establish that the board was legally obligated to so comply. The resolution could reasonably be construed to apply to actions taken by administrative personnel, apart from actions taken by the board itself. In any case, plaintiff made no request for any written statement of charges at any time. He thereby waived whatever rights he might have had under this resolution, and that claim is also rejected.
Plaintiff also contends that defendant board was required to comply with the resolution of May 9, 1973 relating to the treatment of county employees who have been indicted. Again plaintiff has failed to establish any applicable legal obligation on the part of the board. The resolution indicates that in certain instances indicted employees are to be suspended pending resolution of criminal charges, and are to be dismissed if convicted. It is clear that this resolution was intended to benefit the general public, not the county employee. The suspension-dismissal procedure is required as minimal action; stricter procedures, such as that followed here, are not barred. No contractual obligations were created by that resolution and plaintiff's contention fails.
Plaintiff also argues that the action of the board, in conflict with the above-mentioned resolutions, was constitutionally invalid as either impairing the obligation of contracts or as an ex post facto law. There is no merit in either claim. There has been no impairment of contract here, for the resolutions at issue were not a part of plaintiff's contract of employment. The case of Dawson v. Rutherford, 12 N.J. Misc. 567, 173 A. 147 (Sup. Ct. 1934), cited by plaintiff, is inadequate to support his claim in that regard. In Dawson, a borough employee had been injured in the course of his *324 employment and was receiving payments under workmen's compensation when applicable state statutes were amended. The court held that a contract had been established, by law, between the employee and his employer at the time of the employee's injury, and that said contract was constitutionally protected. There is no suggestion in Dawson that the workmen's compensation statute itself became a term of the employee's contract of employment. Neither were the resolutions presented here a part of plaintiff's contract. See Spina v. Consolidated Police, etc., 41 N.J. 391, 400 (1964). His argument as to the impairment of contracts must fail.
Nor can plaintiff support his contention that there was a change in county policy following plaintiff's indictment which operated as an ex post facto law. See Lindsley v. State Prison Bd. of Managers, 107 N.J.L. 51 (Sup. Ct. 1930), aff'd 108 N.J.L. 415 (E. & A. 1931). As to the treatment of county employees who have been indicted, plaintiff's contention fails on the most fundamental point. He has not established any prior board policy whatsoever in this regard. The passing reference to prior policy in the resolution of May 9, 1973 is vague and ambiguous. The testimony elicited at trial was inconclusive. On the facts presented, this court is unable to perceive any legislative action which might be construed as an ex post facto law. Nor can the board's failure to provide plaintiff with prior written notice of his discharge under the resolution of September 13, 1972 be regarded as an ex post facto law.
This leaves for consideration the more troublesome issue of whether the procedure followed in this case was in accord with plaintiff's right to procedural due process under the Due Process Clause of the Fourteenth Amendment, U.S. Const. Amend. XIV. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property," Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and the court must initially inquire whether plaintiff's discharge deprived him *325 of either a property or liberty interest protected by that Amendment. Plaintiff argues that both types of interests are presented here.
A property interest protected by the Due Process Clause must be based upon "a legitimate claim of entitlement." Roth, 408 U.S. at 577, 92 S.Ct. 2701. A mere expectancy is not enough. Under the recent case of Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), it is now settled that in situations such as this the sufficiency of a claim of entitlement is to be determined by reference to state law. See also, Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Plaintiff here relies upon the resolution of October 13, 1971 appointing him to the position at issue "for the duration of such project and for any replacement, substitution, extensions and renewals thereof." That reliance is misplaced. The resolution, as previously noted, was not contractual in nature. No contract of employment was created thereby. Standing alone, the resolution is insufficient to support a finding that plaintiff held a property interest in his position as Emergency Employment Administrator. Moreover, it has been admitted that plaintiff held his position in the unclassified civil service. That admission reinforces this court's construction of the resolution. It also provides an independent basis for the finding that the plaintiff held his position at the will and the pleasure of the board of freeholders.
Atlantic County is a civil service county, subject to the provisions of the Civil Service Act, N.J.S.A. 11:1-1 et seq. A major purpose of the act is to provide the protection of tenure to certain employees. See N.J.S.A. 11:21-1, et seq. Those in the unclassified service, however, are specifically excluded from such coverage. N.J.S.A. 11:22-2. The inference to be drawn from that exclusion is that members of the unclassified civil service serve at the will of their employer and are subject to summary dismissal. That inference has been accepted by the courts of this State. Jacobs v. State *326 Highway Auth., 54 N.J. 393 (1969), rev'g 101 N.J. Super. 572 (App. Div. 1968), concerned a statute exempting the State Highway Authority from the Civil Service Act itself. The Supreme Court described the impact of that exemption:
Thus the Authority was given broad power to hire, promote and discharge employees free of the restraints imposed by the Civil Service Act, Title 11 N.J.S.A. Accordingly its employees cannot acquire tenure and are ordinarily subject to discharge without the benefit of charges, hearing thereon and establishment of good cause. [54 N.J. at 397]
The exclusion of the unclassified service from the tenure provisions of the Civil Service Act has the same effect. This was recognized by the Supreme Court in Perrella and Schroeder, supra, indicating that an unclassified civil servant cannot acquire tenure under the Veterans' Act, N.J.S.A. 38:16-1 et seq. Those holdings are based upon the policy embodied in the Civil Service Act, that those in the unclassified service should serve at the will of the employer. In New Jersey an unclassified civil servant, has without more, no property interest in his employment protected by procedural due process. This court need not decide whether in some instances an unclassified civil servant might acquire such an interest by contract, for that situation is not presented here. No formal contract of employment has been presented, nor has plaintiff attempted to establish the existence of any informal or implied agreement. See Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Plaintiff served at the will and pleasure of the defendant board of freeholders. He had no property interest protected by the Due Process Clause. See Bishop, supra.
Plaintiff also contends that interests in liberty have been implicated here, citing Williams v. Civil Service Comm'n, 66 N.J. 152 (1974). As noted in Williams (at 156), "[t]he term `liberty' in this context has never been precisely defined, but there is no doubt that it must be given a broad and comprehensive reach." See Board of Regents v. Roth, supra, 408 *327 U.S. at 572-573, 92 S.Ct. 2701. However broad that reach may be, the interests of plaintiff raised herein are specific. No claim has been presented, for example, with regard to freedom of speech.
Plaintiff contends he has been deprived of liberty in two ways. He claims that first to have been socially stigmatized, to have suffered damage to his reputation and standing in the community. The second interest asserted is employment related, that is, that plaintiff has suffered disabilities restricting the employment opportunities available to him after his dismissal. These types of liberty interests have been recognized by both the United States Supreme Court in Board of Regent v. Roth, supra, 408 U.S. at 573-575, 92 S.Ct. 2701, and the Supreme Court of this State, Williams, supra, 66 N.J. at 156-157. The issue here is whether the circumstances of this case fall within those recognized categories.
Whatever impact defendant's action may have had upon plaintiff's reputation and standing in the community, it did not constitute the type of deprivation of liberty protected by the Due Process Clause. Plaintiff had been indicted by an Atlantic County grand jury. He held a position involving substantial interaction with the Federal Government as an unclassified civil servant, serving at the pleasure of the defendant board. His dismissal was triggered by a recommendation from an official of a department of the federal government concerned with the program plaintiff was charged with administering. That recommendation was apparently based upon a legitimate concern for preserving the integrity of the program in the eyes of the general public. Defendant's action discharging plaintiff, in response to that recommendation, was not unreasonable.
Of greater significance here, however, is the fact that defendant did not base its action on any charge of dishonesty, impropriety or immorality on plaintiff's part. Neither did the recommendation to which defendant reacted contain any charge against plaintiff. It is undisputed that plaintiff was, *328 in fact, indicted. Although the indictment itself may have injured plaintiff's reputation, the charges therein were leveled by the grand jury, not the defendant herein. Plaintiff was afforded an opportunity to clear himself of those charges at the criminal trial held on the indictment. The board's action, however, did not give rise to the type of injury to reputation protected by procedural due process. As noted in Arnett v. Kennedy, supra, "that liberty is not offended by dismissal from employment itself, but instead by dismissal based upon an unsupported charge which could wrongfully injure the reputation of an employee." 416 U.S. at 157, 94 S.Ct. at 1646. The board made no charges here and, in that respect, was not obliged to provide plaintiff "an opportunity to clear his name." Board of Regents v. Roth, supra, 408 U.S. at 573, 92 S.Ct. at 2707, n. 12.
Consideration of the second type of interest in liberty asserted by plaintiff compels a different conclusion. Disabilities which restrict an employee's freedom to seek future employment, and which are imposed as a consequence of his dismissal from employment with the government, can constitute a substantial deprivation of liberty protected by procedural due process. Plaintiff has not presented any specific disabilities of that type here, apart from those related to injury to his reputation discussed above. His citation of Williams v. Civil Service Comm'n, supra, however calls the court's attention to N.J.A.C. 4:1-8.14, a rule of the Civil Service Commission authorizing the Chief Examiner and Secretary of the Commission to take various actions restricting access to positions in the classified civil service with respect to "prospective employees" who previously "have been removed * * * from the public service * * *" The disability created by N.J.A.C. 4:1-8.14 was one factor which led the Supreme Court to conclude that the plaintiff in Williams was entitled to a "post-termination evidentiary hearing to clear any damage to his reputation" 66 N.J. at 157. That same disability applies to plaintiff here, as it does to any individual *329 who is removed from the public service. The applicability of N.J.A.C. 4:1-8.14 is not restricted by the fact that plaintiff held the position of Emergency Employment Administrator as an unclassified civil servant. While it may be that the actions listed in N.J.A.C. 4:1-8.14(a) can only be exercised in the context of application for employment in the classified service, see N.J.A.C. 4:1-1.6, under N.J.A.C. 4:1-8.14(b)6 those actions are authorized with regard to persons "removed from the public service." Positions in the unclassified service are clearly within the public service. Defendant's attempt to distinguish Williams on the grounds that plaintiff here was in the unclassified service must fail. This court must conclude, under Williams, that plaintiff has been deprived of an interest in liberty protected by procedural due process.
"Once it is determined that due process applies, the question remains what process is due." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The only interest protected by procedural due process which is presented here is that interest in liberty impaired by the disabilities created by N.J.A.C. 4:1-8.14, the same disabilities at issue in Williams. Under Williams plaintiff is entitled, at most, to a posttermination evidentiary hearing. Defendant's action was not arbitrary or capricious, nor was it taken for any constitutionally impermissable purpose. Plaintiff is not entitled to reinstatement. Nor has plaintiff established any damages stemming from the deprivation of liberty encountered here. While it appears plaintiff has attempted to secure several positions in government employment, there is no evidence that any of the sanctions of N.J.A.C. 4:1-8.14 have been taken against him. See N.J.A.C. 4:1-8.14(e).
The type of hearing to be afforded plaintiff must be determined according to the circumstances of this particular case. The United States Supreme Court has noted that "the interpretation and application of the Due Process Clause are intensely practical matters." Goss v. Lopez, 419 *330 U.S. 565, 578, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975), and that "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation," Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). Given the passage of time since plaintiff's dismissal, and the limited issue presented herein, this court sees no reason to require a separate hearing before defendant board of freeholders. An appropriate and adequate hearing as to the relevance of plaintiff's discharge under N.J.A.C. 4:1-8.14 may be conducted before this court. For that purpose, and that purpose only, the court retains jurisdiction. A full evidentiary hearing may be held, at plaintiff's option, to establish the circumstances of his removal from the public service and their relevance to the application of N.J.A.C. 4:1-8.14. In all other respects plaintiff's claims are rejected.
Judgment will be entered accordingly.