774 A.2d 559

JOHN J. COYLE, JR., PLAINTIFF–RESPONDENT, v. THE BOARD OF CHOSEN FREEHOLDERS OF WARREN COUNTY, JOHN DIMAIO, INDIVIDUALLY, MICHAEL DOHERTY, INDIVIDU- ALLY, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 13, 2001—Decided May 3, 2001.

Before Judges STERN, A.A. RODRÍGUEZ and FALL.

*John H. Dorsey* argued the cause for appellants (*Dorsey and Fisher*, attorneys; *Joseph J. Bell, Jr.*, and *Giselle Lupianez*, of counsel and on the brief).

*Michael J. Perrucci* argued the cause for respondent (*Fischbein, Badillo, Wagner & Harding*, attorneys; *Maureen A. Coyle–Martyak*, on the brief).

*John J. Farmer, Jr.*, Attorney General, attorney for amicus curiae (*Nancy Kaplen*, Assistant Attorney General, of counsel;

*John P. Bender*, Assistant Attorney General, and *Daniel P. Reynolds*, Senior Deputy Attorney General, on the brief).

The opinion of the court was delivered by

STERN, P.J.A.D.

This appeal requires us to decide if the Warren County Board of Chosen Freeholders ("Board") can terminate its County Counsel, without cause, prior to the end of his three year statutory term of office. Because there is no dispute that the County Counsel is a legal position held by a lawyer subject to the Supreme Court's plenary power governing the practice of law,[1] and because County Counsel is the legal advisor to the governing body which is, in essence, the client when there is no County Executive, we hold that the Board can discharge County Counsel before the termination of his statutory term.

## I.

At the general election of November 7, 2000, the republican candidate was elected to serve a three-year term on the Board, effective January 1, 2001. The election changed the Board's composition to a republican majority as of that date.

On December 20, 2000, the Board, then having a majority of democrats, adopted a resolution appointing plaintiff John J. Coyle, Jr., ("Coyle") as County Counsel for a three-year term. The resolution provided:

> On motion by Mr. DeBosh, seconded by Mrs. Stone[,] the following resolution was adopted by the Board of Chosen Freeholders of the County of Warren at a meeting held December 20, 2000[:]
>
> **RESOLUTION APPOINTING JOHN J. COYLE, JR. AS WARREN COUNTY COUNSEL AND AUTHORIZING AN EMPLOYMENT AGREEMENT**
>
> **BE IT HEREBY RESOLVED** by the Board of Chosen Freeholders of the County of Warren as follows:

---

[1] At least, for certain purposes, the Legislature has defined County Counsel as "the chief legal officer or advisor of the governing body of a county." *N.J.S.A.* 30:4–27.2.

1. Pursuant to *N.J.S.A.* 40A:9–43, John J. Coyle, Jr., Esq., an attorney-at-law of the State of New Jersey, with offices located at 865 U.S. Highway 22 West, Phillipsburg, New Jersey 08865, is hereby appointed as Warren County Counsel for a three (3) year term of office commencing December 24, 2000 and until December 23, 2003.

2. The Employment Agreement between the Board and Mr. Coyle setting forth the terms and conditions of said appointment and employment in regard to duties, responsibilities and compensation, which Employment Agreement is made a part of this Resolution by reference and is incorporated herein as if set forth verbatim, is hereby approved by the Board, and the Director of the Board is hereby authorized and directed to execute said Employment Agreement on behalf of the Board.

The Warren County Board consists of three members. One Freeholder is elected each year to a three-year term. *See N.J.S.A.* 40:20–20 to –21. *See also, e.g., N.J.S.A.* 40:20–20 to –35. The sole republican member on the Board as of December 2000, defendant John DiMaio ("DiMaio"), opposed the appointment of Coyle as County Counsel. DiMaio has certified:

1. I am a Defendant in the above matter and appointed to serve an unexpired Freeholder term on December 6, 2000.

2. Prior to Plaintiff Coyle's acceptance of an appointment to a three-year term as County Counsel commencing December 24, 2000, I informed him that he did not hold the trust and confidence of the new majority on the Freeholder Board reorganizing January 1, 2001, and that he would be requested to resign.

3. Plaintiff Coyle was urged to not rely on a thirty-five year old case [*see Pillsbury v. County of Monmouth*, 140 *N.J.Super.* 410, 356 *A.2d* 424 (App.Div. 1976) ] and to accept that it was his professional responsibility to resign under circumstances where he was appointed by a "lame duck" Freeholder Board whose governance was rejected by electoral mandate. Accordingly, whatever harm incurred to Plaintiff's pension status is self-inflicted.

On January 1, 2001, the current Board rescinded the employment agreement with Coyle and passed a resolution appointing Joseph J. Bell ("Bell") as County Counsel. That resolution provided:

On motion by Mr. Doherty, seconded by Mr. DiMaio[,] the following resolution was adopted by the Board of Chosen Freeholders of the County of Warren at a meeting held January 1, 2001[:]

**RESOLUTION APPOINTING JOSEPH J. BELL, ESQ. AS WARREN COUNTY COUNSEL AND AUTHORIZING AN EMPLOYMENT AGREEMENT**

**BE IT HEREBY RESOLVED** by the Board of Chosen Freeholders of the County of Warren as follows:

1. Pursuant to *N.J.S.A.* 40A:9-43, Joseph J. Bell, Esq., an attorney-at-law of the State of New Jersey, with offices located at 10 Bloomfield Ave., Denville, NJ 07834 is hereby appointed as Warren County Counsel for a three (3) year term of office commencing January 1, 2001 and until December 31, 2003.

2. The Employment Agreement between the Board and Mr. Bell setting forth the terms and conditions of said appointment and employment in regard to duties, responsibilities and compensation, which Employment Agreement is made a part of this Resolution by reference and is incorporated herein as if set forth verbatim, is hereby approved by the Board, and the Director of the Board is hereby authorized and directed to execute said Employment Agreement on behalf of the Board.

In his certification, Freeholder Michael Doherty ("Doherty"), the republican elected on November 7, 2000, to a three-year term commencing January 1, 2001, stated:

3. In order to implement the will of the electorate, I, together with Freeholder John DiMaio, are entitled to retain County Counsel in whom we place our trust and confidence.

4. Prior to Plaintiff, John Coyle's, acceptance of an appointment to the Office of County Counsel for a three-year term commencing December 24, 2000, by the defeated democrat majority, Mr. Coyle was advised that he did not enjoy the faith, confidence and trust of the incoming Board and advised not to accept the position so as to endanger his pension benefits by resigning posts with municipal clients.

5. The salary provided for Plaintiff in his three-year contract purports to bind the hands of Freeholder Boards for the next three budget years. As such, it is an ultra-vires act and hence void.

6. An example of how the policy of fiscal conservatism cannot be implemented with Defendant Coyle as County Counsel is therefore his own professional services contract which he approved with the County of Warren.

7. Since Plaintiff Coyle accepted his appointment over our objections to his representation of the Board of Chosen Freeholders upon its reorganization, a resolution rescinding his appointment was adopted on January 1, 2001.

8. Joseph J. Bell, Esq., in whom we do place our faith, trust and confidence, was appointed to a three-year term as County Counsel coincident with the annual reorganization meeting.

9. While I do not question Plaintiff's professional qualifications, I am entitled as a client and as an elected official to be represented by counsel satisfactory to a majority of the annually reorganized Freeholder Board.

10. Plaintiff is obligated to resign upon request of a client pursuant to the Rules of Professional Conduct. His failure to do so provides "cause" for his resignation and/or removal.

11. Joseph J. Bell is currently serving as County Counsel, most notably in defense of the rightful action of the Board of Chosen Freeholders removing Plaintiff Coyle from Office. There is a meeting scheduled with former County Counsel David A. Wallace and the County Administrator and Freeholder John DiMaio on January 5, 2001 to coordinate the orderly transition of legal matters

involving the County of Warren. Since Plaintiff Coyle was not counsel of record in any matters, his presence is not required to address any issues which arose during his seven day tenure over the Christmas holidays.

12. My rights to retain counsel of choice will be irreparably harmed if I am forced to confide in an attorney who does not have the implicit trust and confidence of the Board of Chosen Freeholders.

On January 3, 2001, plaintiff Coyle filed this action by verified complaint in lieu of prerogative writs seeking a declaratory judgment that he was a valid office holder. After hearing oral argument, the trial judge entered final judgment on February 1, 2001, reinstating Coyle as County Counsel, with back pay, *nunc pro tunc* as of January 1, 2001, and rescinding the Board's resolution of January 1, 2001 to appoint Bell as County Counsel. We declined to stay the reinstatement, but accelerated the appeal and heard argument on March 13, 2001. Thereafter, we invited the Attorney General to appear *amicus curiae*. His brief was filed on April 17, 2001, and the parties responded on April 24, 2001.

In granting judgment to plaintiff, the trial judge properly relied on *Pillsbury v. Bd. of Chosen Freeholders of Monmouth County*, 140 *N.J.Super.* 410, 356 *A.*2d 424 (App.Div.1976), which constituted binding authority on the trial court. We find that opinion outdated, and reverse the judgment of the Law Division.

## II.

We begin our analysis by expressing general agreement with the position of the *amicus curiae* that:

[t]he Legislature did not intend to empower a lame duck board [of chosen freeholders] to preempt the prerogative of its successor. Rather, it intended a new county counsel to be appointed upon organization of a new board and that the term of office be attached to the office and not be personal to the incumbent.

However, we decline to remand for further proceedings to determine "the length of [the] unexpired term" of plaintiff's predecessor (if his term had not expired before he left office) at the time of plaintiff's appointment, as *amicus* suggests, because neither party had advanced the position that the predecessor's term of office expired on December 31, 2000, or that the issue before us would become moot by construing that term to have expired on Decem-

ber 31, 2000. In other words, so long as Coyle was appointed to replace a County Counsel whose term had expired, or the term of Coyle's predecessor extended beyond January 1, 2001, we are faced with a "case or controversy" of public importance and one which could occur in Warren County every year.[2]

The parties agree that because Warren County has a three-person Board of Chosen Freeholders, and one-third thereof is up for election each year, the majority of the Board could change annually,[3] notwithstanding the statutory three-year term of its County Counsel. In these circumstances the issue must be resolved now as well as before it occurs again.

## III.

We note at the outset what we perceive as not being involved on this appeal. As already stated, we are concerned with the ques-

---

[2] In response to the brief of *amicus curiae,* defendants urged us to "conclude, *sua sponte,* that the term of office for a County Counsel commences, as *Amicus Curiae* suggests, on January 1[,] during, or immediately following, the reorganization meeting of the Board." However, defendants also noted that "it is unclear as to when the practice deviated from appointing a county counsel during the reorganization meeting to some seemingly arbitrary time during the year" and candidly acknowledged that Coyle's predecessor was appointed and reappointed in December 1994 and 1997. On that basis, Coyle's term would expire in December 2003. In any event, there is no dispute to plaintiff's affidavit which provides in part:

> e. Robert E. Wade, Esq. was ... appointed in September of 1976 and served as a hold over-until December 23, 1991.
> f. Brian D. Smith, Esq. was appointed on December 23, 1991 and served through December 23, 1994.
> g. David A. Wallace, Esq. was appointed on December 23, 1994 and served through December 23, 2000.
> 3. On December 23, 2000, I was appointed to a three year term which would expire on December 23, 2003.

Hence, the parties appear to agree that the term of Coyle's predecessor expired before his new term commenced, and a remand to explore that issue would only delay resolution of the issue before us.

[3] In the words of the trial judge, "there is a three member Board here, every year one Freeholder has to stand for election. So every year there is going to be a change in the Board of Freeholders."

tion of whether the Warren County Board of Freeholders can terminate its representation by the incumbent plaintiff in the absence of a finding of "cause" or "good cause." We are not concerned with the term of office of a constitutional officer whose position is protected by the same fundamental or organic document which gives the Supreme Court its rule making power and plenary authority over the practice of law. Thus, our holding does not apply to a constitutional officer whose term is prescribed by the Constitution or by a statute implementing the constitutional provision creating the position. Nor does it necessarily apply to a public official whose statutory term of office is made coextensive with that of the body appointing him or her. Rather, as noted above, we are here dealing with a term which must, by virtue of its statutory duration, transcend the annual reconstitution or reorganization of the Warren County Board of Chosen Freeholders.

## IV.

The Board contends that the trial court erred in reinstating Coyle as County Counsel. The Board argues that the trial court neglected to apply the Supreme Court's Rules of Professional Conduct ("R.P.C.") which, it says, requires "that an attorney must withdraw his representation of a client when he is discharged."

*R.P.C.* 1:16 provides in part:

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the Rules of Professional Conduct or other law;

(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or

(3) *the lawyer is discharged.*

[*R.P.C.* 1.16 (emphasis added).]

However, *N.J.S.A.* 40A:9–43 provides:

In every county the *board of chosen freeholders shall appoint a county counsel* and a county engineer. *The term of office of the county counsel shall be 3 years* and of the county engineer 5 years.

[Emphasis added.]

Independently, *N.J.S.A.* 40A:9–25 provides that county officers can be terminated "only for cause," and specifically states that "[n]o officer or employee shall be removed from his office or position for political reasons." Therefore, the parties agree that a conflict exists between *R.P.C.* 1.16 and *N.J.S.A.* 40A:9–43, in conjunction with *N.J.S.A.* 40A:9–25, because the statutory three-year term and ability to remove "only for cause" conflicts with a client's ability to discharge an attorney.[4]

In 1976, we affirmed the trial court's decision to uphold the statutory three-year term of a county counsel, and held that a county counsel could not be removed without "good cause." *Pillsbury, supra,* 140 *N.J.Super.* at 413, 356 *A.*2d 424. In *Pillsbury,* plaintiff was appointed county counsel by the Monmouth County Board of Chosen Freeholders for a term of three years pursuant to *N.J.S.A.* 40A:9–43. *Id.* at 411–12, 356 *A.*2d 424. After the Board "changed it political complexion" due to elections of members creating a democratic majority rather than a republican majority which existed when plaintiff was appointed county counsel, the new Board asserted a lack of trust and confidence in plaintiff. *Id.* at 412, 356 *A.*2d 424. The new Board also adopted resolutions to appoint a special county counsel and requested that plaintiff resign from his position. *Ibid.*

Plaintiff filed an action against the Board seeking a determination by the court of the duties of county counsel and to enjoin the Board from interfering with his duties as county counsel. *Ibid.* The Board sought to obtain possession of the county legal files. *Ibid.*

The trial court found that county counsel could not be removed absent good cause. *Pillsbury v. Bd. of Chosen Freeholders,* 133 *N.J.Super.* 526, 536, 337 *A.*2d 632 (Law Div.1975). In addressing

---

[4] There is no legislative history to support the suggestion that the failure of County Counsel to resign his position when a new majority is constituted and requests his resignation itself constitutes statutory "cause" because it is a *per se* violation of the disciplinary rule.

the application of *DR* 2–110(B)(4), predecessor to *R.P.C.* 1.16, the trial judge rejected the Board's argument that *"N.J.S.A.* 40A:9–43[ ] must fall before the superior right of a client to discharge his attorney," noting that the Board still had the power to remove County Counsel for cause pursuant to *N.J.S.A.* 40A:9–25. *Ibid.* Moreover, the court stated that the legislative intent was clear in specifically providing a three-year term for county counsel and that there was no indication that the disciplinary rule was designed to control. *Id.* at 534–35, 337 *A.*2d 632.[5]

On appeal, we affirmed the trial court's decision, substantially for reasons stated by the trial court, but added the following which is pertinent to the present case:

The post of county counsel is a public office. *Gallaher v. Camden Cty.,* 129 *N.J.L.* 290 [29 *A.*2d 406] (Sup.Ct.1942). Except as to those positions created by the Constitution, public offices are creatures of the Legislature. The Legislature alone may determine the duties and the interrelation among the public offices it establishes. Within the constitutional framework the Legislature is the architect of the structure of government. *Reilly v. Ozzard,* 33 *N.J.* 529 [166 *A.*2d 360] (1960); 20 *C.J.S. Counties* § 100 at 891.

The fact that the position of county counsel is a public office is important for two reasons. It supports the constitutionality of the act of the Legislature in fixing the term, and secondly, it establishes that the attorney holding the office is not only involved in the practice of law, but also, because of his status as a public officer, has the duty of carrying on operations of government, *DeMarco v. Bergen Cty. Bd. of Chosen Freeholders,* 36 *N.J.Super.* 382, 386 [115 *A.*2d 635] (Law Div.1955), *aff'd,* 21 *N.J.* 136 [121 *A.*2d 396] (1955). Contrary to the suppositions of the board, the office of county counsel exists for the protection of all of the citizens of the county and not solely for the benefit of the freeholders elected to govern that county.

[140 *N.J.Super.* at 413–14, 356 *A.*2d 424].

It would be easy to conclude, in light of this language and considering no amendment to the Disciplinary Rules has been adopted in light of *Pillsbury* or when recodified after *Pillsbury*

---

[5] The language of *DR* 2–110(B)(4) and *R.P.C.* 1:16(a)(3) are substantially the same. *DR* 2–110(B)(4) required the withdrawal of attorney representation when "[h]e is discharged by his client" while *R.P.C.* 1:16(a)(3) provides for withdrawal when "the lawyer is discharged." The "Disciplinary Rules of the Code of Professional Responsibility [were] deleted and [the] Rules of Professional Conduct, as amended and supplemented, [were] adopted July 12, 1984, to be effective September 10, 1984." *R.* 1:14.

was decided, that Coyle should be reinstated to the position of county counsel to complete his three-year term unless otherwise discharged for "cause."

However, developments since *Pillsbury* affect its efficacy. In *Taylor v. Bd. of Educ.*, we subsequently upheld the discharge of an attorney from a school board contrary to *N.J.S.A.* 38:16–1 which provides for tenure to veterans of "the government of this State, or the government of any county or municipality, including any person employed by a school board or board of education." 187 *N.J.Super.* 546, 553–54, 455 *A.*2d 552 (App.Div.), *certif. denied*, 95 *N.J.* 228, 470 *A.*2d 441 (1983). In *Taylor*, we distinguished *Pillsbury*, as follows:

The only case we have found interpreting the disciplinary rule in relation to a statute is *Pillsbury v. Monmouth Cty. Freeholder Bd.* That case presented an issue of contention between *DR* 2–110(B)(4) and *N.J.S.A.* 40A:9–43, a statute setting the appointive term of county counsel at three years.... The Appellate Division affirmed, but met the issue by holding that the office of county counsel is a public office, a creature of the Legislature, and that body has the constitutional right to "determine the duties and the interrelation among the offices it establishes." The court held that "[w]ithin the constitutional framework the Legislature is the architect of the structure of government." It also noted, in supporting the constitutional validity of the statute over the disciplinary rule, that county counsel "is not only involved in the practice of law, but also, because of his status as a public officer, has the duty of carrying on the operations of government." Thus, in the particular circumstances of that case, the Legislature's constitutional prerogative prevailed. The case is clearly distinguishable from the one at hand.

[*Id.* at 554–55, 455 *A.*2d 552 (citations omitted).]

We added:

In our view it would be gross judicial eccentricity to acknowledge the disciplinary rule, the constitutional power of the Supreme Court to enact it and yet hold that the legislative grant of tenure controls. The disciplinary rule and *N.J.S.A.* 38:16–1 are in direct conflict. Likewise, it is clear that the Supreme Court is the exclusive constitutional repository of the responsibility for regulating the attorney-client relationship. Although we are aware of our duty to avoid constitutional conflict, we are obliged to meet the issue.

. . . .

Accordingly, we hold that *N.J.S.A.* 38:16–1 does not govern the attorney-client relationship. To the extent it so intends, it must give way to *DR* 2–110(B)(4).

[*Id.* at 559, 561, 455 *A.*2d 552 (citation to and quotation from *Am. Trial Lawyers Ass'n v. N.J. Supreme Court*, 66 *N.J.* 258, 330 *A.*2d 350 (1974) omitted).]

Thereafter, in *Hiering v. Township of Jackson*, 248 *N.J.Super.* 9, 589 *A.*2d 1357 (App.Div.1991), we upheld the termination of plaintiff as township counsel when a statute authorizing a four-year term for such position was repealed and replaced by a statute authorizing a one-year term. We affirmed the trial court's retro-active application of the new statute to plaintiff's service as township counsel. *Hiering, supra,* 248 *N.J.Super.* at 9–10, 589 *A.*2d 1357. Although we perceived the issue as whether a statute authorizing a shorter term for township counsel could be retroac-tively applied to plaintiff who was already serving in office, the trial court viewed the issue as broader. Judge Serpentelli, relying upon our decision in *Taylor*, addressed the application of *R.P.C.* 1.16 as follows:

> [T]he meaning of this rather lucid rule [*R.P.C.* 1.16] has been blurred in its application to representation of governmental bodies by the decision of the Appel-late Division in *Pillsbury v. Board of Freeholders of Monmouth Cty.*, 140 *N.J.Super.* 410 [356 *A.*2d 424] (App.Div.1976).
>
> . . . .
>
> [I]t is obvious that this court respectfully disagrees with the result in *Pillsbury* to the extent that it sustains the trial court holding that the Rules of Professional Conduct cited above must give way to an act of the Legislature establishing the term of office for county counsel. As will also be noted, the court questions whether the *Pillsbury* decision is still viable. However, absent its overruling or another decision of the Appellate Division clearly in conflict with it, the trial court may respectfully disagree with it but is bound to comply with it to the extent that it is controlling. *Reinauer Realty Corp. v. Paramus*, 34 *N.J.* 406, 415 [169 *A.*2d 814] (1961).
>
> . . . .
>
> This court respectfully suggests that if a line is to be drawn between those instances in which the Rules of Professional Conduct are to be strictly or liberally interpreted—a distinction which this court would not favor nor which appears to be contemplated by the rules—an argument could be made that the strictest applica-tion should be in instances of attorney—client relationships in the setting of governmental representation. While it is true that the attorney serves the public at large, it is also true that the public has elected the officials who retain their counsel. Surely the public can presume that their chosen officials, or the majority of those officials at least, should have freedom to select the professionals with whom they will work in harmony to provide the good government the citizens believe they will obtain through their vote. The will of the electorate may be frustrated by not giving those they have elected the right to fashion their team to carry out the mandate inherent in their election. Furthermore, requiring the majority of the governing body to receive the advice of counsel in whom it does not

exhibit trust and confidence hardly engenders public respect, not to mention organizational stability and efficiency. Thus, the evils arising from an attorney's refusal to terminate the attorney-client relationship when discharged by the client are multiplied many fold in public representation as opposed to a one on one private relationship. Additionally, our profession brings greater disrespect upon itself when the discharge is resisted in the public arena because of the inevitable notoriety of the dispute.

> [248 *N.J.Super.* 37, 43, 43 n. 2, 44–45, 589 *A.*2d 1373 (Law Div.1990), *aff'd,* 248 *N.J.Super.* 9, 589 *A.*2d 1357 (App.Div.1991) (parallel citations omitted).]

In light of our statutory holding in affirming the trial court in *Hiering,* we stated:

> We add only that the decision in *Pillsbury v. Board of Freeholders of Monmouth Cty.,* 140 *N.J.Super.* 410 [356 *A.*2d 424] (App.Div.1976) is deemed to be inapposite and *Taylor v. Hoboken Bd. of Education,* 187 *N.J.Super.* 546 [455 *A.*2d 552] (App.Div.1983)[,] *certif. denied* [,] 95 *N.J.* 228 [470 *A.*2d 441] (1983) is controlling. To the extent that the *Pillsbury* rationale may be inconsistent with the result reached in *Taylor,* we regard the latter to be controlling in the sense that it holds that Supreme Court disciplinary rules generally are applicable even to attorneys holding public office in that capacity. However, we have no need to discuss here which might govern if there is any tension between a Legislative provision and a disciplinary rule.

> [248 *N.J.Super.* at 10, 589 *A.*2d 1357 (parallel citations omitted).]

In *Siss v. County of Passaic,* 75 *F.Supp.*2d 325, 328 (D.N.J. 1999), *aff'd,* 234 *F.*3d 1265 (3d Cir.2000) (unpublished table decision), plaintiff was terminated from his position as Assistant County Counsel after an election transferred the political make-up of the Board of Freeholders. Plaintiff asserted several state and federal claims against the Board and other defendants. *Id.* at 327–28. In interpreting the controlling New Jersey case law, the court stated the following:

> The Appellate Division in *Taylor* did not expressly articulate the distinction between the circumstances before it and those in *Pillsbury. See Hiering v. Township of Jackson,* 248 *N.J.Super.* 37, 43 n. 2, 44, 589 *A.*2d 1373 (Law Div.1990), *aff'd,* 248 *N.J.Super.* 9, 589 *A.*2d 1357 (App.Div.1991) (arguing that no real factual distinction exists and doubting that *Pillsbury* remains good law). In this Court's view, however, there is a meaningful distinction to be drawn based on the absence in *Taylor* of any statutory protection specifically for an attorney. *N.J.S.A.* 38:16–1 is a tenure provision of general applicability, whereas the provision at issue in *Pillsbury, N.J.S.A.* 40A:9–43, applies specifically to attorneys, i.e. county counsel.

> The Appellate Division seems to have drawn this distinction in *Hiering v. Township of Jackson.* . . . 6

---

6 The District Court thereupon quoted from our opinion in *Hiering, supra,* 248 *N.J.Super.* at 10, 589 *A.*2d 1357, set out herein above.

> The Court concludes that, under New Jersey law, in the absence of a contrary statutory provision specifically applicable to attorneys, an attorney has no right to retain a position once discharged by a client under RPC 1.16(a)(3). Plaintiff can point to no statutory provision protecting his right to his position, and none specifically applicable to attorneys. Therefore, under RPC 1.16(a)(3), he had no right to retain his position when the Board of Freeholders sought to discharge him. For that reason as well, the Court determines that plaintiff had no protected property interest in maintaining his position within the meaning of the Due Process Clause.

> [*Id.* at 343–44.] 7

In upholding the termination of an Assistant County Counsel, Judge Bissell found significant that County Counsel received a three-year term, whereas an Assistant County Counsel "was [an] at-will employee." *Id.* at 342. Notwithstanding *Siss'* obligation to follow our interpretation of New Jersey law and its limited interpretation of our *Hiering* opinion, there can be no doubt that we have questioned the viability of *Pillsbury* since the time it was decided.

## V.

The continued viability of *Pillsbury* must also be considered in light of the Supreme Court's recent decisions regarding analogous issues.

The New Jersey Constitution provides that the Supreme Court has exclusive and plenary authority regarding the practice of law. *See Knight v. City of Margate,* 86 *N.J.* 374, 386–87, 431 *A.*2d 833 (1981); *see also In re Jackman,* 165 *N.J.* 580, 591, 761 *A.*2d 1103 (2000). The Constitution provides:

---

7 We asked at oral argument if there is any contention that Coyle could not be removed for political reasons. *See N.J.S.A.* 40A:9–25. There is no contention that the Board cannot choose or discharge County Counsel on the basis of party affiliation, undoubtedly because the parties recognize the confidential relationship with the employer. *See Battaglia v. Union County Welfare Bd.,* 88 *N.J.* 48, 62, 438 *A.*2d 530 (1981), *cert. denied,* 456 *U.S.* 965, 102 *S.Ct.* 2045, 72 *L.Ed.*2d 490 (1982); *see also Branti v. Finkel,* 445 *U.S.* 507, 517–19, 100 *S.Ct.* 1287, 1294–95, 63 *L.Ed.*2d 574, 583–84 (1980); *Siss, supra,* 75 *F.Supp.*2d at 339–41; *CWA v. Whitman,* 335 *N.J.Super.* 283, 287 n. 1, 289–92, 762 *A.*2d 284 (App.Div. 2000), *certif. denied,* 167 *N.J.* 636, 772 *A.*2d 937 (March 27, 2001).

The Supreme Court shall make rules governing the administration of all courts in the State and, subject to law, the practice and procedure in all such courts. *The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted.*

[*N.J. Const.*, Art VI, § 2, par. 3 (emphasis added).]

The Court's constitutional powers extend to promulgating "rules of general application governing the conduct of judges and attorneys." *Knight, supra,* 86 *N.J.* at 387, 431 *A.*2d 833. In *Knight,* the Court addressed whether a statute, if it "is construed as covering members of the judicial branch of government, . . . is unconstitutional as being in conflict with the Supreme Court's constitutional authority to regulate the judiciary and the practice of law." *Id.* at 379, 431 *A.*2d 833. After finding that the statute governing casino employment by public officials, did "cover" members of the Judiciary including part-time municipal court judges of Atlantic City, the Court concluded:

that in the full enjoyment of its paramount and exclusive powers over the judicial branch, the Supreme Court has the authority, reasonably to be implied under the twin principles of the separation and interdependence of governmental powers, to permit or accommodate the lawful and reasonable exercise of the powers of other branches of government even as that might impinge upon the Court's constitutional concerns in the judicial area. The constitutional validity of such action by another branch of government, and the Supreme Court's ultimate power to accept or reject such action, turn upon the legitimacy of the governmental purpose of that action and the nature and extent of its encroachment upon judicial prerogatives and interests.

[*Id.* at 390–91, 431 *A.*2d 833.]

As a result of this analysis, the Court found the statute to be constitutional in that its provisions served a significant governmental purpose and were, in fact, not in conflict with the Court's authority since the conduct prohibited by the statute would also be found to violate the Canons of Judicial Ethics, *id.* at 391–93, 431 *A.*2d 833, including by part-time municipal court judges sitting outside of Atlantic City. *Id.* at 395–98, 431 *A.*2d 833.[8]

---

[8] In *Parker v. M & T Chemicals, Inc.,* 236 *N.J.Super.* 451, 452, 566 *A.*2d 215 (App.Div.1989), we held that an in-house attorney could file a claim for money damages pursuant to the Conscientious Employee Protection Act and consistent with *R.P.C.* 1.16(a)(3). We said that he could do so because the " 'force of the

Unlike *Knight,* here we deal with an issue which concerns not an administrative or personnel question affecting a judge or lawyer, but with the attorney-client relationship itself and the ethical obligations of an attorney. In that context, *see Battaglia, supra,* 88 *N.J.* at 64–65, 438 *A.*2d 530, in which the Court held that the County Welfare Board could not be required to utilize the services of a legal assistant not acceptable to it:

> [The legal assistant's] attorney-client relationship could include the Board's confidential communications. Those confidences could properly concern policymaking or other matters that were an integral part of its political philosophy. The Board had the right to repose its trust and confidence in its counsel and legal assistants. Trust and confidence are the essence of the attorney-client relationship. Assuredly, a public body should not be compelled, at least in the absence of some legislative directive, to retain an attorney when those elements do not exist.
>
> . . . .
>
> *Since the attorney-client relationship is a confidential one, it is appropriate for the attorney to have a political philosophy compatible with that of the client.* Particularly when the subject matter of the confidence may relate to that philosophy, the loyalty and trust inherent in the relationship are practical necessities.
>
> [Emphasis added.]

*See also Siss, supra,* 75 *F.Supp.*2d at 339–41.

We recognize that the position of County Counsel is a public office, and "ultimately the creature[ ] of legislation," *Reilly v.*

---

statute' can be accommodated to the allegedly conflicting ethical principle.' " *Id.* at 459, 566 *A.*2d 215. In applying the *Knight* analysis, Judge King stated:

> In the situation before us, we see no "conflict with the constitutional judicial powers of the Supreme Court." The Whistle Blowers Act "serves an important, legitimate governmental purpose clearly within the State['s] police powers and deals with a direct and vital concern of the legislature. . . ." The Act does not interfere with the Court's regulation of the legal profession. The Act does not interfere with any legitimate interest of the employer-client. Rather, it reinforces the Court's constitutional mission to encourage and insure the ethical practice of law.
>
> [*Id.* at 461–62, 566 *A.*2d 215 (citations omitted).]

Referring to *Taylor,* we also said that "[o]ur holding does not . . . foist unwanted counselors on public or even private clients, as [a] contrary holding[ ] in . . . *Taylor v. Hoboken* would have done. Nor does our holding permit the Legislature in any way to meddle in the procedural mechanics of the Supreme Court's control over the practice of law." *Parker, supra,* 236 *N.J.Super.* at 460, 566 *A.*2d 215.

*Ozzard,* 33 *N.J.* 529, 553, 166 *A.*2d 360 (1960), but it is one which involves the attorney-client relationship subject to the Supreme Court's exclusive rule making authority. Hence, we find little to distinguish County Counsel from a practitioner in private practice unless and until the Supreme Court decides to make such a distinction. Other *R.P.C.*s relate only to lawyers without any specification as to private or public, and distinguish the two when deemed appropriate. *See R.P.C.* 3.8 (requiring special responsibilities of a prosecutor); *R.P.C.* 1.11 (establishing guidelines for the inappropriateness of a lawyer representing a client in connection with a matter that relates to the lawyer's former employment as a public officer or employee). We do not herein deal with an issue of public policy in terms of deciding whether a republican lawyer can represent a republican Board better than a democrat, or vice-versa, nor are we dealing with what the Rules of Professional Conduct should provide. Rather, we are concerned with a constitutional principle relating to governance of the practice of law and the fundamental proposition that clients should be free to employee counsel of their own choosing. To the extent that recognition of statutory terms are in the public interest, the Supreme Court, not the Appellate Division, can change the rule.

In *Cohen v. Radio–Elecs. Officers Union,* 146 *N.J.* 140, 679 *A.*2d 1188 (1996), the Supreme Court clearly indicated the absolution of a client's right to discharge an attorney:

> The client's right to hire and fire an attorney is integral to the client-lawyer relationship. "A client may always discharge a lawyer, regardless of cause and regardless of any agreement between them. A client is not forced to entrust matters to an unwanted lawyer."
>
> [Citations omitted.]

The Court stated further that "[a] retainer agreement may not prevent a client from discharging a lawyer," *id.* at 157, 679 *A.*2d 1188, and that "[a]s a matter of public policy, retainer agreements may not limit unreasonably a client's right to discharge an attorney." *Id.* at 160, 679 *A.*2d 1188. *See also Restatement (Third) of the Law Governing Lawyers* § 32(c), § 32 cmt. b (2000) (stating that a client may always discharge a lawyer); *In re Succession of*

*Wallace,* 574 *So.*2d 348, 355 (La.1991) (finding that a statute providing for the removal of a testator's appointed attorney "only for just cause" was unconstitutional based upon its direct conflict with Rule 1.16(a)(3)). Thus, in *Cohen,* the attorney could be terminated notwithstanding the limitations for doing so in the retainer agreement, but that the attorney was "entitled to recover in *quantum meruit* for the reasonable value of the services provided," *id.* at 164, 679 *A.*2d 1188, including "the cost of reasonable notice of termination." *Id.* at 165, 679 *A.*2d 1188.

█ Moreover, *R.P.C.,* 1.16(a) and (c) expressly provide that the only exceptions to the attorney's withdrawal from representation upon discharge are "[w]hen [the attorney is] required to do so by rule or when ordered to do so by a tribunal." No exceptions are made for a public official or person serving a statutory term.

Accordingly, we hold that the Warren County Board of Free-holders could terminate plaintiff as County Counsel. Because no issue is raised before us, warnings were given to plaintiff alerting him of the challenge to his appointment, and the issue has not been briefed, we do not address whether Coyle is entitled to reasonable compensation if there had been good faith reliance on his statutory term in giving up other clients or representation to take the office.

## VI.

Finally, we recognize that our holding is in conflict with *Pillsbury, supra,* and that the Supreme Court has not taken any affirmative action, either on recodification of the Rules of Professional Conduct or otherwise, to overrule that opinion. Accordingly, we stay our judgment and maintain the status quo permitting Coyle to continue to serve as County Counsel until Monday, June 4, 2001, in order to permit him to appeal and/or petition the Supreme Court for certification and seek a further stay.